In the Matter of Thomas A. CURTIS, Katrina G. Curtis, Debtors.

George W. LEDFORD, Chapter 13 Trustee, Plaintiff,

v.

CREDITHRIFT OF AMERICA, Defendant.

Bankruptcy No. 3–84–00781. Adv. No. 3–84–0246.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 26, 1985.

George W. Ledford, Englewood, Ohio, pro se.

Stephen D. Miles, Dayton, Ohio, for defendant.

Thomas A. and Katrina G. Curtis, pro se.

## DECISION SUSTAINING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THOMAS F. WALDRON, Bankruptcy Judge.

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court is determined to be a core proceeding under 28 U.S.C. § 157(b)(2)(K), in which the plaintiff-Chapter 13 Trustee disputes the validity, extent and priority of a lien.

Plaintiff's complaint against defendant-creditor, Credithrift of America (hereinafter Credithrift), alleges that the claim by the defendant to the personal property listed in a security agreement signed by Thomas A. and Katrina G. Curtis ["19" Zenith color TV, Weaver Piano, Electrophonic stereo, Broyhill dining room suite, 2 couches, accent chair, 2 tables (coffee & end) dinette set, Kenmore sewing machine, 3 bedrooms (beds, dressers & chest of drawers)"] is an unsecured claim because of defendant's failure to comply with OHIO REV.CODE § 1319.06 which requires a husband and wife to join in the creation of a chattel mortgage on their household property. Attached to the complaint were the following exhibits:

1) A proof of claim filed by Credithrift in the amount of $1,434.20 by which Credithrift claimed a security interest in certain household goods of the debtors;

2) An installment note in the principal amount of $1,980.33 executed in favor of Credithrift, listing only Thomas A. Curtis as the debtor, but signed by both Thomas A. and Katrina G. Curtis;

3) A security agreement, which grants to Credithrift a security interest in certain household goods, listing only Thomas A. Curtis as the debtor, but signed by both Thomas A. and Katrina G. Curtis; and

4) A copy of the financing statement listing only Thomas A. Curtis as the debtor and signed by him only.

Subsequent to defendant's answer, the plaintiff moved for summary judgment pursuant to Bankr.R. 7056 on the grounds that the pleadings demonstrated no genuine issue as to any material fact and that the plaintiff is entitled to judgment as a matter of law. Counsel for the defendant admitted in his answer all the facts stated in plaintiff's complaint, but denied that the lien created by the security agreement is invalid under OHIO REV.CODE ANN. § 1319.06 (Page's 1979). Only the plaintiff submitted a memorandum of law.

There is no dispute as to the material facts. The issue at law is whether OH. REV.CODE § 1319.06 operates to categorize Credithrift's claim in the household property as unsecured if the creditor did not perfect the claim against *both* the husband and wife (emphasis supplied). For

the reasons set forth the court determines the claim is a secured claim to the extent of any property owned by Thomas A. Curtis and an unsecured claim to the extent of any property owned by Katrina G. Curtis.

The statute which is entitled "Husband and wife must join in chattel mortgage on household property." provides that:

No husband or wife shall create any lien by chattel mortgage or otherwise upon any personal household property owned by either or both of them, without the joint consent of both husband and wife. No such mortgage is valid unless executed by both husband and wife.

This section does not apply to any mortgage or lien for the purchase price of such property.

OH.REV.CODE ANN. § 1319.06 (Page's 1979).

This statute is the only one remaining from an entire chapter of the Ohio Revised Code relating to chattel mortgages which was repealed by the enactment in 1961 of Ohio's Uniform Commercial Code (hereinafter the U.C.C.). A chattel mortgage is "a transfer of title of personal property as security for a debt." Burns, *Some Specific Problems Raised by Article 9 of the Uniform Commercial Code in Ohio*, 14 W.RES.L.REV. 56, 61, 62 (1962) (citing *Tufts v. Haynie*, 4 Ohio C.C. 494 (4th Cir. 1890)).

There is no legislative history or case law specifically on this statute. The plain meaning of the statute, and the opinion of at least one commentator, is that the statute is intended to protect the consumer-spouse from unknowingly having his or her household goods used as collateral for a loan. *Burns* at 62. The only time the spouse would not merit such protection according to the language of § 1319.06 is when the funds obtained are actually used to buy the household property (in today's Code terminology, a purchase money security interest) since new household property of value arguably equal to the loan is being received and the non-consenting spouse should be in the same economic position as prior to the purchase. OH.REV.CODE

ANN. § 1309.05 [U.C.C. § 9–107] (Page's 1979). In such a situation, the creditor's rights are perfected without the filing of a financing statement.

There was a predecessor statute to § 1319.06, and it read:

Section 1. It shall be unlawful for either husband or wife (where that relation exists) to create any lien by chattel mortgage or otherwise upon any personal household property owned by either or both of them, without the joint consent of both husband and wife, and from and after the time this act shall take effect, no such mortgage of such personal household property shall be valid unless executed by both husband and wife.

Section 2. The provisions of the act shall not apply to any mortgage on personal household property now in force, nor to any mortgage or lien for the purchase price of such property, nor in any manner affect any lien upon any personal property whatsoever now existing.

§§ 8565–1 and 8565–2, OH.GEN.CODE, CVIII Ohio Laws 13 (1919). Case law interpreted this statute to be an attempt by the legislature to prevent the practice of a husband "from making an absolute conveyance or incumbrance of his chattel property without joining his wife in the transaction." *Donnelly v. Lulfs*, 12 Ohio App. 305, 306 (1918). While the few cases interpreting §§ 8565–1 and 8565–2 do not come from the Ohio Supreme Court, they do demonstrate the requirements necessary at that time to obtain a security interest.

*Ridenour v. Scott*, 39 Ohio App. 529, 177 N.E. 926 (1931) clarified that §§ 8565–1 and 8565–2 related only to personal "household" property. There, a properly filed chattel mortgage, signed only by the husband, could not be invalidated by the wife, nor could she exempt such property from execution in lieu of their homestead, because the chattel mortgage was on personal property that was not "household" property.

In *Schaub v. Welfare Finance Corp.*, 65 Ohio App. 68, 29 N.E.2d 223 (1939), it was held that the statutes offered no protection

to a husband who, without his wife's consent, signed a note on property actually belonging to his wife. He was still liable on the note to the creditor who had obtained a judgment against him. The creditor, however, was held liable to the wife for the value of the household goods sold on the theory of conversion. *Id.* at 72–73, 29 N.E.2d at 225.

One reported case involved these statutes and a bankruptcy situation. *Hale Furniture Co. v. Markley,* 38 Ohio L.Abs. 39, 48 N.E.2d 131 (1942). However, in *Hale* the dispute did not arise in the bankruptcy proceeding but rather in a state court action brought after the debtor-husband had been granted a discharge from the debt underlying the chattel mortgage signed only by him when he and his wife, although still married, were living apart. The validity of the chattel mortgage was questioned by the wife in a subsequent replevin action brought by the creditor. The Miami County Court of Appeals held that because the parties were married, even though separated, the wife's signature was required by § 8565-1. Since she had not signed the chattel mortgage, it was not enforceable against her and the creditor did not prevail in the replevin action.

As *Schaub* indicated, while absent a bankruptcy discharge, the underlying contract obligation to repay the borrowed money still exists, both the husband and wife must consent before their personal household property can be used as security for a debt. The cases under the former statute, however, also indicated that no further signature authorization was required to enforce the security agreement. It was only necessary that the chattel mortgage itself be filed with the county recorder of the county in which the mortgagor resided. *See* OH.GEN.CODE ANN. §§ 8560, 8561 (Page's 1938).

Today, Chapter 1309 of the OHIO REV. CODE governs secured transactions. Although the Code does not abolish chattel mortgages, neither does it treat them differently than any other security agreement. OH.REV.CODE ANN. § 1309.13

[U.C.C. § 9–202] (Page's 1979). 48 OH. JUR.2D *Secured Transactions* Part 1 § 39 (1966). In fact, the Official Comment to § 1309.13 states that the rights and duties of secured parties do not depend on who has title to the collateral. It further recognizes that chattel mortgages may have relevancy to nonsecurity aspects of a transaction such as locating title for tax purposes.

It appears that § 1319.06 was retained in the OH.REV.CODE when all other sections concerning chattel mortgages were repealed because like the Code, it also has a broader application than simply to chattel mortgages: "No husband or wife shall create any lien by *chattel mortgage or otherwise*" (emphasis added). *Id.* Thus the statute's emphasis is not on chattel mortgages; rather it is on the creation of any lien or security interest by persons occupying the status of husband and wife.

The point is that today under the U.C.C., *all* security interests must conform to certain standards to be enforceable against a debtor. In this connection, we refer to the opinion of Judge William A. Clark in *Ledford v. Thorp Financial Services (In re Joyce ),* 52 B.R. 45, whose discussion of the attachment and perfection requirements of the U.C.C. in a case involving the same issues of law we find controlling and hereby incorporate it into this decision. That case held that § 1319.06 governs only the establishment of a lien against the personal household property of married persons (equivalent to attachment under the U.C.C.) and not to the perfection thereof. To expand on that decision, we further find that once the secured spouse has given his or her consent, that consent cannot be divested on the ground that the creditor through inadvertence did not obtain the secured spouse's signature on the financing statement. Had the creditor asked the second spouse to sign the financing statement at the time the obligation was incurred, that spouse could not have refused in light of already agreeing to the transaction in the initial security agreement or the creditor could have declined to proceed with the loan.

Still, when the security interest is not perfected in accordance with state law, in a dispute among creditors for the same property, a creditor holding an unperfected security interest loses the priority protection the security agreement offered and is relegated to a status below that of a perfected secured party and judgment lien creditor (or bankruptcy trustee who steps into those shoes), his interest being superior only to the interest of a general creditor who never obtained a security agreement. *See* OH. REV.CODE ANN. § 1309.20 [U.C.C. § 9–301], § 1309.22 [U.C.C. § 9–303) (Page's 1979); OH.REV.CODE ANN. § 1309.14 [U.C.C. § 9–203] (Page's Supp.1984).

■ Only a perfected security interest cannot be defeated in a bankruptcy proceeding and is deemed a secured claim; an unperfected security interest is deemed an unsecured claim. Comment 1 to OH.REV. CODE § 1309.20; T.J. White & R.S. Summers, *Handbook of the Law Under The Uniform Commercial Code* 918–19, 994 (2d ed. 1980); *see In re Baker*, 48 B.R. 932 (Bankr.W.D.N.Y.1985); *In re Pat Freeman, Inc.*, 42 B.R. 224 (Bankr.S.D.Oh. 1984); *In re Butz*, 1 B.R. 435 (Bankr.E.D. Pa.1979); *see also* 11 U.S.C. §§ 506 and 101(30), (31), (42) and (43).

■ Accordingly, since both Thomas A. and Katrina G. Curtis signed the chattel mortgage, a valid lien was created under Ohio law. However, since only Thomas A. Curtis signed the financing statement, Credithrift has a perfected security interest and secured claim only against property to the extent that it belongs to him and it has an unperfected security interest and an unsecured claim as to any property to the extent that it belongs to Katrina G. Curtis. *See Citizens State Bank of Nevada v. Davidson (In re Davidson )*, 738 F.2d 931 (8th Cir.1984).

IT IS THEREFORE ORDERED THAT plaintiff's motion for summary judgment as it pertains to the security interest granted to Credithrift by Thomas A. Curtis is DENIED. In regard to Katrina G. Curtis, plaintiff's motion is SUSTAINED.